# U.S. District Court
## Southern District of Mississippi (Southern)
## CIVIL DOCKET FOR CASE #: 1:21-cv-00329-TBM-RPM
## Internal Use Only

| | |
|---|---|
| Farnsworth et al v. Knauf Gips KG et al | Date Filed: 10/26/2021 |
| Assigned to: District Judge Taylor B. McNeel | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Robert P. Myers, Jr | Nature of Suit: 385 Prop. Damage Prod. Liability |
| Cause: 28:1332 Diversity-Product Liability | Jurisdiction: Diversity |

**Plaintiff**

**David M. Farnsworth**     represented by     **James V. Doyle , Jr.**
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
205/533-9500
Fax: 205/414-7528
Email: jimmy@doylefirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eloise B. Farnsworth**     represented by     **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Erin Peden**     represented by     **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Zachary Peden**     represented by     **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Douglas Premoe**     represented by     **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Iudok Premoe**            represented by    **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeremy Skinner**          represented by    **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Renee Skinner**           represented by    **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Casey Weems**            represented by    **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jennifer Weems**         represented by    **James V. Doyle , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Knauf Gips KG**

**Defendant**

**Knauf Plasterboard Tianjin Co., Ltd.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/26/2021 | 1 | COMPLAINT with jury demand against Knauf Gips KG, Knauf Plasterboard Tianjin Co., Ltd. ( Filing fee $ 402 receipt number 4691633), filed by Douglas Premoe, Jennifer Weems, Eloise B. Farnsworth, Iudok Premoe, Renee Skinner, Jeremy Skinner, David M. Farnsworth, Erin Peden, Casey Weems, Zachary Peden. (Attachments: # 1 Civil Cover Sheet)(wld) Modified on 10/27/2021 to correct file date (wld). (Entered: 10/27/2021) |

| 10/26/2021 | 🔒 | (Court only) ***Set RPM, Jury and No CMC Flags (wld) (Entered: 10/27/2021) |
| 10/27/2021 | [2](#) | Summons Issued as to Knauf Gips KG, Knauf Plasterboard Tianjin Co., Ltd.. (wld) (Entered: 10/27/2021) |
| 10/27/2021 | [3](#) | Letter sent to MDL Clerk with docket entries and complaint. (wld) (Entered: 10/27/2021) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DAVID M. FARNSWORTH; ELOISE B.
FARNSWORTH; ERIN PEDEN;
ZACHARY PEDEN; DOUGLAS PREMOE;
IUDOK PREMOE; JEREMY SKINNER;
RENEE SKINNER; CASEY WEEMS; and,
JENNIFER WEEMS;**

       *Plaintiffs*,

**v.**

**KNAUF GIPS KG; and KNAUF
PLASTERBOARD TIANJIN CO., LTD,**

       *Defendants*.

**Case No.** 1:21cv329 TBM-RPM

**JURY TRIAL DEMAND**

## COMPLAINT

Plaintiffs allege that defective Chinese-manufactured drywall products have been found in their homes. Based on the markings found on the defective products, Plaintiffs bring this action against Knauf Gips, KG and Knauf Plasterboard Tianjin, Co., Ltd. (collectively hereinafter "Knauf" or "Defendants), who are believed to be the manufacturers of the drywall found in Plaintiffs' homes. Pursuant to Fed.R.Civ.P.20, Plaintiffs have permissively joined as parties in this action against these Defendants because their claims arise from a common series of actions or occurrences. Each Defendant in this action is liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing inspecting, installing, or sale of the defective drywall at issue in the litigation.

## JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C.
§1332(a)(2) as the amount in controversy for each Plaintiff exceeds $75,000.00, exclusive of
interest and costs.  Plaintiffs are owners of real property in Mississippi and all Defendants are
foreign business entities; thus, complete diversity exists.

2.      This Court has supplemental jurisdiction over this matter under 28 U.S.C. §1367
as all Defendants are subject to the Mississippi Long-Arm Statute, Miss. Code Ann. §13-3-57,
for the tortious conduct described herein.

3.      Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b) and (c)
because all Plaintiffs reside in United States, most currently reside in the State of Mississippi
within this jurisdiction and a substantial amount of the events and occurrences giving rise to the
claim occurred in this district, or a substantial part of the property that is the subject of this action
is situated in this district, while all Defendants are foreign business entities with no principle
place of business or corporate headquarters located within Florida.

## PLAINTIFFS

4.      Plaintiffs, David M. Farnsworth and Eloise B. Farnsworth, are citizens of
Mississippi and own real property located at 5441 Lancaster Lane, Pass Christian, Mississippi
39571.  Plaintiffs are bringing claims against Defendants as set forth in the following paragraphs
of this Complaint.

5.      Plaintiffs, Erin Peden and Zachary Peden, are citizens of Mississippi and own real
property located at 3301 Mount Vernon Court, Ocean Springs, Mississippi 39564.  Plaintiffs are
bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

6.      Plaintiffs, Douglas Premoe and Iudok Premoe, are citizens of Mississippi and own real property located at 425 Inverness Court, Ocean Springs, Mississippi 39564. Plaintiffs are bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

7.      Plaintiffs, Renee Skinner and Jeremey Skinner, are citizens of Mississippi and own real property located at 9530 Benesheewah Trail, Pass Christian, Mississippi 39571. Plaintiffs are bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

8.      Plaintiffs, Casey Weems and Jennifer Weems, are citizens of Mississippi and own real property located at 130 Bayou Circle, Gulfport, Mississippi 39571. Plaintiffs are bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

## DEFENDANTS

9.      Both Defendants are foreign entities organized in foreign countries and with principal places of business in foreign countries.

10.      Defendant Knauf GIPS, KG ("Knauf GIPS") is a German corporation doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. Knauf GIPS is a leading manufacturer of building materials and systems. Knauf GIPS together with Knauf Plasterboard Tianjin Co., Ltd, ("Knauf Tianjin") provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all times material hereto, Knauf GIPS supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin and its agents, apparent agents, and employees.

11.      Upon information and belief, Knauf GIPS, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed

within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within various states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.

12.     Upon information and belief, Knauf GIPS and/or Knauf Tianjin have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Knauf GIPS and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the United States. Knauf GIPS directly controlled through its global family of businesses the importation of defective drywall at all times and provided oversight of internal investigations of sales of defective drywall.

13.     Defendant Knauf Tianjin is a foreign corporation doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia.  Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall.  Knauf Tianjin is the actual agent and/or apparent agent of Knauf GIPS.  Upon information and belief, Knauf Tianjin individually and/or together with and at the direction and control of its principal, Knauf GIPS, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers throughout the United States.  Knauf Tianjin and/or Knauf GIPS have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Knauf Tianjin and/or Knauf GIPS manufactured and sold, directly and indirectly, to certain suppliers in the United States.  Representatives of Knauf Tianjin have intentionally directed communications to distributors in the United States, employed American distributors as agents for the company, shipped product intending for it to be distributed in the United States and otherwise engaged in

commerce and/or circumstances that the company reasonably expected that it could be hailed into the United States courts.

14.    In 1995, the Knauf GIPS introduced its advanced production techniques and technology into China.  From 1997 through 2001, Knauf GIPS established three plasterboards plants which are located in Wuhu, Tianjin, and Dongguan.  The product quality of all Knauf-related plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf GIPS' headquarters in Germany.  Knauf GIPS's sales and technical support teams support Knauf's businesses throughout the world, including Knauf Tianjin in China.  Knauf Tianjin and its employees are controlled by the actual and/or apparent agents of Knauf GIPS.  And, based on information and belief all Knauf entities act without regard to corporate formalities.

## GENERAL ALLEGATIONS

15.    Defendants' drywall is predominately composed of gypsum.

16.    Within Defendants' defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants as described herein, sulfur compounds exit the drywall.

17.    The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

18.    Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

19.    As a direct and proximate result of Defendants' actions and omissions, each Plaintiff's structures and personal property have been exposed to Defendants' defective drywall containing the latent defect and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

20.    Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in each Plaintiff's home, residence or structure.

21.    Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

22.    Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

23.    As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exist as a latent defect which exit these products, Plaintiffs have suffered, and continue to suffer, economic harm.

24.    As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, each Plaintiff has suffered, and continues to suffer damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage

resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

25.     After learning that their products being sold in the United States were defective, Defendants took no action required under federal law (see Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq*.) to notify their importers, distributors, agents, or consumers of the harmful effects caused by their drywall.

26.      After learning that their products being sold in the United States were defective, Defendants took no action and initiate a corrective action plan.

27.     By failing to take action to notify potential victims or attempt to implement a corrective action plan for the damage their defective drywall products caused, Defendants directly violated the federal CPSA that specifically requires that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates and unreasonable risk of death or injury, it must inform the CPSC. (See 15 U.S.C. 2064(b)).

28.     After learning that their products being sold in the United States were defective, Defendants breached their post-sale duty to warn consumers in Mississippi, including Plaintiffs.

29.     Based on information and belief, Defendants executed confidential indemnification agreements with its distribution partners in the United States on or about 2006, rather than comply with its post-sale duty to warn consumers as required by federal law and the laws of the State of Mississippi.

30.     Plaintiffs' damages include, but are not limited to, cost of inspection; cost and expenses necessary to fully remediate their homes of defective drywall, cost of alternative living arrangements, economic hardship resulting in lower credit ratings leading to higher interest rates

on loans and credit cards, lost value or devaluation of their homes and property; and, loss of use and enjoyment of their home and property.

31. As a direct and proximate result of Defendants' latent defect in its drywall and the harmful effects of the sulfur compounds that exit these products, each Plaintiff has a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of corrective notice to the Consumer Product Safety Commission, the federal agency charged with implementing a corrective action plan for defective consumer products sold in the United States of America.

## ESTOPPEL

32. Defendants were and are under a continuous duty to disclose to Plaintiffs and other consumers in Mississippi the true character, quality, and nature of its gypsum drywall products. Instead, it actively concealed the true character, quality, and nature of its defective gypsum drywall products and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of its gypsum drywall products.

33. Plaintiffs reasonably relied upon Defendants' knowing and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

## DISCOVERY RULE

34. The causes of action alleged herein did not accrue until Plaintiffs discovered that the defective gypsum drywall products in their respective homes had the defective characteristics that were concealed by Defendants by overt acts and intentional omissions that breached their post-sale duty to warn Plaintiffs.

35.    Plaintiffs had no realistic ability to discover the presence of the defective drywall products or to otherwise learn of the fraudulent concealment and/or intentional misrepresentations by Defendants, until it was discovered and confirmed by an experienced Chinese-manufactured drywall inspector.

36.    At no time was the defective nature of Defendants' defective gypsum drywall product revealed to the public through either notice to the Consumer Product Safety Commission, the State of Mississippi, or directly to consumers.

## COUNT I
### NEGLIGENCE

37.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

38.    Defendants owed a duty to Plaintiffs to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall, including a duty to adequately warn of their failure to do the same.

39.    Defendants knew or should have known that their wrongful acts or omissions would result in harm and damages in the manner set forth herein.

40.    Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

41.    Defendants likewise breached their duties to Plaintiffs by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and belongings of Plaintiffs.

42.     Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs with the drywall, upon learning it had been sold in an unreasonably dangerous condition.

43.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs.

44.     As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE

45.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

46.     Defendants owed statutory duties to Plaintiffs to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

47.     Defendants breached their statutory duties to the Plaintiffs by failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

48.     Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other state and local building codes, to Plaintiffs by failing to warn about the defective nature of the drywall.  For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTM C 1396/C 1396M-069, and its predecessor(s), including ASTM C36.

49.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes of Plaintiffs.

50.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiffs.

51.     As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs were harmed and have incurred damages as described herein.

<u>**COUNT III**</u>
**STRICT LIABILITY**

52.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

53.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

54.     The drywall, including that installed in the homes of Plaintiffs was placed by Defendants into the stream of commerce.

55.     Defendants knew that the subject drywall would be used without inspection for defects by consumers.

56.     Defendants intended that the drywall reach the ultimate consumers, including Plaintiffs, and it indeed reached Plaintiffs when it was installed in their homes.

57.     When installed in Plaintiffs' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

58.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

59.     The subject drywall was not misused or altered by any third parties.

60.     The Defendants' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

61.     The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing.

62.     The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gasses and/or other chemicals through off-gassing.

63.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

64.     The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use by Plaintiffs.

65.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Plaintiffs of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

66.     Plaintiffs were neither aware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

67.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs.

68.     The benefit, if any, of Plaintiffs using Defendants' defective drywall was greatly outweighed by the risk of harm and danger.

69.     The defects in the drywall, as well as Defendants' failure to adequately warn Plaintiffs of the defects rendered the drywall unreasonably dangerous, was the direct and proximate cause of damages incurred by Plaintiffs.

<u>COUNT IV</u>
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTY**

70.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

71.     Defendants and/or their agents were in privity with Plaintiffs and/or Plaintiffs were foreseeable third-party beneficiaries of any warranty.

72.     At the times Defendants' drywall was installed, utilized, supplied, inspected, sold, in the Plaintiffs' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

73.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

74.     The drywall was defective because it was not fit for the uses intended by Defendants; the installation of the drywall in Plaintiffs' homes was not suitable for use as a building material, because it contained the defects as set forth herein.

75.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' homes as a building material) due to the defects set forth herein.

76.     Defendants had reasonable and adequate notice of the Plaintiffs' claims for breach of warranty and failed to cure.

77.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs have incurred harm and damages as described herein.

## COUNT V
## PRIVATE NUISANCE

78.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

79.     The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' use and enjoyment of their properties and caused them harm and damage as discussed herein.

80.     Defendants' interference has impaired the rights of Plaintiffs' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

81.     Defendants' invasions were intentional and unreasonable, and/or unintentional, but otherwise negligent or reckless.

82.     The interference with Plaintiffs' use of their property was caused by Defendants and is substantial and is ongoing.

83.     Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

84.     As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs have incurred harm and damages and injuries as described herein.

## COUNT VI
## NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE

85.      Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

86.     Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

87.     Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, Defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the homes or other structures owned by Plaintiffs.

88.     By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs.

89.     Defendants likewise breached their duties to Plaintiffs by failing to warn about the corrosive and dangerous propensities of the drywall.

90.     Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs.

91.     Plaintiffs have incurred damages by virtue of exposure of their property to the defective drywall at issue in this litigation.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product would cause injury to Plaintiffs.

92.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages as described herein.  The injuries sustained by Plaintiffs are within the foreseeable zone of risk created by Defendants.

## COUNT VII
## UNJUST ENRICHMENT

93.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

94.     Defendants received money as a result of Plaintiffs' purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs.

95.     Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs.

96.     Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VIII
## VIOLATION OF THE MISSISSIPPI CONSUMER PROTECTION ACT

97.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

98.     This is an action for relief under Miss. Code Ann. § 75-24-1, et seq. (Mississippi Consumer Protection Act).

99.     The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but  not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Mississippi Consumer Protection Act.

100.    Plaintiffs have suffered actual damages as a result of Defendants' violation of the Mississippi Consumer Protection Act and are entitled to relief.

101.    As a direct and proximate cause of Defendants' violation of the Mississippi Consumer Protection Act, Plaintiffs have incurred harm and damages as described herein.

## COUNT IX
## FRAUDULENT MISREPRESENTATION

102.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

103.      Beginning in 2006, Defendants intentionally and fraudulently misrepresented the fitness of their drywall product to its buyers and distributors through its marketing activities.

104.     In Particular, Defendants intentionally and fraudulently:

    a.     Failed to adequately warn about the level of sulfur off-gassing;

    b.     Failed to provide full and complete information about corrosive nature of the gasses its products emit;

    c.     Provided marketing material that did not adequately disclose the risks that Defendants knew and understood about their product;

    d.     Provided importers, distributors, or consumers information about their product that did not adequately disclose the risks that Defendants knew of; and,

    e.     Overstated the quality of their drywall product.

105.      The representations were made by the Defendants with the intent that importers, exporters, distributors and consumers, including Plaintiffs, rely upon them, in willful, wanton, and reckless disregard for the lack of truthfulness of the representations and with the intent to defraud and deceive Plaintiffs.

106.     Plaintiffs reasonably relied on the fraudulent misrepresentations directly or as third-party beneficiaries when purchasing their homes.

## COUNT X
## NEGLIGENT MISREPRESENTATION

107.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

108.    From the time Defendants first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants made misrepresentations to Plaintiffs and the general public, including but not limited to the misrepresentation that Defendants' drywall was safe, fit, and effective for use in the homes of Plaintiffs.

109.    Defendants owed a duty to Plaintiffs to exercise reasonable care to ensure they did not misrepresent the safety or fitness for use and failed to exercise that reasonable  care and therefore breached their duty.

110.    The Defendants made misrepresentations without any reasonable grounds for believing them to be true, and were in fact, reckless.

111.    The Defendants had a duty to correct these material misstatements because they knew or should have known that they were inaccurate and that others would reasonably rely on them and suffer damages.

112.    These misrepresentations were made directly by Defendants, by sales representatives and other authorized agents of Defendants, and in publications and other written materials directed to their customers including builders, distributors and importers, with the intention of inducing reliance, purchase, and use of their product.

113.    The representations by the Defendants were in fact false, in that their product is not safe, fit, and effective for use in the homes and structures owned by Plaintiffs because their drywall has a propensity to emit corrosive gasses.

114.    The representations by Defendants were made with the expectation and intention of inducing reliance upon them and increasing their sale of drywall products.

18

115.   Plaintiffs reasonably relied on the misrepresentations made by the Defendants to their detriment.

116.   In reliance of the misrepresentations by the Defendants, Plaintiffs were induced to purchase and use Defendants' drywall.

117.   If Plaintiffs had known of the true facts and the facts concealed by the Defendants, Plaintiff would not have used Defendants' product.

118.   The reliance of Plaintiffs upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

119.   As a direct, proximate, and foreseeable result of Defendants' negligent misrepresentations, Plaintiff suffered injuries and damages as alleged  herein.

### COUNT XI
### FRAUDULENT CONCEALMENT

120.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

121.   At all relevant times, Defendants knew that their drywall was defective, unreasonably unsafe, and that its risks were understated and its benefits were overstated.

122.   Defendants willfully, intentionally and fraudulently concealed their knowledge from Plaintiffs, Plaintiff's builders, distributors, importers, and the public, and instead knowingly provided false information.

123.   Defendants withheld information that they had a duty to disclose through advertising, marketing materials, sales personnel, publications, that their product was fit for its intended use.

124.   Defendants withheld information about the severity of  the risks of using their product and their knowledge of the  harmful effects.

19

125.    Defendants withheld information that their product failed to comply with the IBC, and other state and local building codes like other gypsum products available on the market.

126.    The above facts were material and would have been considered important to a reasonable person.

127.    Had the above facts been disclosed, they would have changed Plaintiffs' decision to purchase their affected property or Defendants' product.

128.    Defendants had a duty to disclose the information to Plaintiffs and other consumers.

129.    Defendants had sole access to material facts concerning, and unique and special knowledge and expertise regarding, the dangers and unreasonable risks associated with their gypsum products.

130.    Defendants knew or should have known and expected or should have expected and intended that Plaintiffs and others would rely on the inaccurate information they provided.

131.    As a foreseeable, direct, and proximate result of Defendants' actions and fraudulent concealment, Plaintiffs suffered injury.

## COUNT XII
### FRAUD

132.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

133.    Defendants' intentional misrepresentations and concealments constitute fraud under state law and were made with the intent to defraud its distributors and all downstream purchasers, including consumers such as Plaintiffs.

134.    Specifically, Defendants intentionally and fraudulently did the following:

       a.    In 2006, Defendants received written and verbal complaints from U.S. customers about their defective drywall;

20

b.  Specifically, Banner Supply Company passed complaints it received from builders and installers to Mike Norris, Defendant Knauf Tianjin's general manager;

c.  Based on information and belief, Mr. Norris contacted the Knauf headquarters in Germany about the complaints received;

d.  Executive level employees of Defendants, including Isabel Knauf who was serving as manager of Knauf's operations in Asia, discussed the complaints and chose to send at least one corporate representative to the United States to meet with one of their larger distributors in Florida, Banner Supply Company;

e.  After confirming that their drywall product was indeed defective and being widely sold primarily in the Southeastern United States, Defendants chose to take no corrective action and instead continued to sell the product to its distributors without any limitation or disclosure regarding the defective nature of their product;

f.  After confirming that their drywall product was defective and being sold in the United States, Defendants struck an indemnification agreement with Banner Supply Company, one of its distributors, in order to avoid litigation and to encourage continuing sales of the defective product without any limitation or disclosure regarding the defective nature of their product;

g. Based on information and belief, the terms of the indemnification agreement between Defendants and Banner Supply required both parties to conceal the existence of the deal from government, media, and the public;

h. After confirming that their drywall product was defective and being sold in the United States, Defendants chose to notify no other distributors or buyers that their drywall was indeed defective; instead, Defendants chose to conceal the defective nature of its product while continuing its marketing and sale of the remaining defective product, estimated to be 55 million pounds, that had been imported from its Tianjin plant in China;

i. On information and belief each and every advertisement and marketing channel fraudulently omits information about the risks of defective Knauf-manufactured drywall and overstates the benefits;

j. Defendants failed to disclose that their product was not as safe and effective as other gypsum products sold by other manufacturers;

k. Defendants failed to disclose that the risk of harm associated with their gypsum products was greater than the risk of harm associated with other gypsum products sold by other manufacturers;

l. Defendants failed to disclose that their drywall was not adequately tested;

m. Defendants failed to disclose that testing had revealed unreasonably high risk of damage to homes and personal property;

n. On information and belief, Defendants failed to disclose that Defendants intentionally withheld internal quality tests; and

o. Defendants affirmatively asserted that their drywall was safe and fit for its intended use.

135. Plaintiffs and other consumers were misled by Defendants' affirmative statements or material omissions that provided the fraudulently inaccurate information described above.

136. Defendants had access to these facts, while Plaintiffs did not and were unaware of them and could not reasonably learn of them from an alternative source prior to purchase.

137. The above facts were material to Plaintiffs' decision to either purchase the gypsum product from Defendants' distributors or to purchase the affected property, and they reasonably relied on Defendants' representations either directly or indirectly.

138. As a direct, proximate, and foreseeable result of Defendants' fraud they caused Plaintiffs' injuries.

## COUNT VI
## MISSISSIPPI PRODUCTS LIABILITY ACT

139. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

140. In addition to any and all damages, attorneys' fees and other remedies made available to Mississippi Plaintiffs under the warranty of fitness and/or warranty against defects, the Manufacturing Defendants are liable to Mississippi Plaintiffs under the Mississippi Products Liability Act, ("MPLA"), Miss. Code Ann. § 11-1-63, *et seq.*

141. Defendants, upon information and belief, expressly warranted that "the gypsum boards manufactured and sold… are guaranteed to be free from defects in materials and workmanship."

142. Defendants expressly warranted that "the gypsum boards were manufactured in accordance with ASTM C36."

143. Defendants' markings on the drywall products explicitly indicate compliance with the ASTM standards by marking each drywall product with an ink stamp containing "ASTM C36."

144. The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable off-gassing and/or emission of sulfur compounds and/or other corrosives, toxins and/or irritants, which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

145. At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

146. In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had the reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

147. Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendants' control, it deviated in a material way from Defendant's own specification or performance standards.

148.    In addition, and in the alternative, defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

149.    In addition, or in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

150.    In addition, or in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

151.    Defendants are therefore liable to Mississippi Plaintiffs for all damages suffered as a consequence of their actions or inactions.

### PUNITIVE DAMAGES ALLEGATIONS

152.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

153.    The acts, conduct and omissions of Defendants, as alleged throughout the Complaint were willful and malicious. Defendants committed these acts with a conscious disregard for the rights and safety of Plaintiffs and other consumers and for the primary purpose of increasing Defendants' profits from the sale and distribution of its product. Defendants'

outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

154.    Prior to the manufacturing, sale, and distribution of its product, Defendants knew that said drywall was in a defective condition as previously described herein and knew that those consumers or homeowners would experience and did experience damages due to the corrosive off-gassing.  Further, Defendants, through their officers, directors, managers, and agents, knew that the drywall presented a substantial and unreasonable risk of harm to Plaintiffs or other consumers and Defendants unreasonably subjected all consumers of said drywall to risk of injury or damages.

155.    Despite their knowledge, Defendants, acting through their officers, directors and managing agents, for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in their drywall and failed to warn the public, including Plaintiffs of the extreme risk of injury occasioned by said defects inherent in the defective drywall. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of drywall or sheetrock knowing these actions would expose persons to damages in order to advance Defendants' pecuniary interest and monetary profits.

156.    Defendants' conduct was so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiffs and other consumers, entitling Plaintiffs to punitive damages.

## EQUITABLE AND INJUNCTIVE RELIEF

157.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

158.    Plaintiffs are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

159.    Plaintiffs will suffer irreparable harm if the Court does not render the injunctive relief as set forth herein, and if Defendants are not ordered to recall, rescind, and/or repair the homes and structures owned by Plaintiffs.

160.    Plaintiffs demand injunctive and equitable relief and further, that Defendants be ordered to: (1) remediate, repair and/or replace the drywall in the homes and structures upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the general public that there is no defect in, or danger associated with the drywall; and, (3) institute, at their own cost, a public awareness campaign to alert the general public of the defect and dangers associated with their defective drywall.

161.    Until Defendants' defective drywall has been removed and Plaintiffs' homes are properly remediated, Defendants should provide continued environmental and air monitoring in the homes and structures.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.   Compensatory damages;

b.   Statutory damages;

c.   Punitive damages;

d.   Pre and post-judgment interest as allowed by Mississippi law;

e.   Injunctive relief;

f.   An award of attorney's fees as allowed by Mississippi law;

g.   An award of taxable costs; and

h.   Any and all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr. (MS Bar No. 100727)
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*